BOARD OF EDUCATION OF THE CITY OF MINNEAPOLIS v. PUBLIC SCHOOL EMPLOYEES' UNION LOCAL NO. 63, AFL, AND OTHERS.[1]

February 2, 1951.

No. 35,506.

---
[1]Reported in 45 N. W. (2d) 797.

*John F. Bonner,* City Attorney, and *D. J. Shama,* Assistant City Attorney, for appellant.

*John A. Goldie* and *Samuel I. Sigal,* for respondents.

*William D. Gunn* filed a brief as *amicus curiae* on behalf of Minnesota State Federation of Labor.

*Hall, Smith & Hedlund* filed a brief as *amicus curiae* on behalf of Hennepin County Industrial Union Council, affiliated with the Congress of Industrial Organization.

*Child & Child* filed a brief as *amicus curiae* on behalf of Minneapolis Taxpayers Association and others.

MAGNEY, JUSTICE.

In an action brought by the board of education of Minneapolis to restrain and enjoin Public School Employees' Union Local No. 63, AFL, and its officers from striking, the court issued a temporary restraining order on January 5, 1951. Upon the hearing of a motion by the board for an order continuing in force such restraining order pending determination of the action, the court on January 22, 1951, discharged and vacated the temporary restraining order and denied the board any relief. The board appeals.

Plaintiff obtained an ex parte temporary restraining order without notice to defendants, and without the making of findings of fact as a basis for such ex parte order as required by M. S. A. 185.13 and 185.14. At the hearing on the temporary injunction, defendants appeared specially and objected to the jurisdiction of the court, claiming that the complaint upon its face shows that the subject of the action is a labor dispute within the meaning of M. S. A. c. 185, and thus that the complaint fails to plead the express statutory prerequisites which are a condition precedent to the granting of any injunctive relief in labor disputes under the act. Defendants also moved for a dismissal of the complaint and all proceedings thereunder and that the ex parte restraining order be vacated.

The board of education of Minneapolis maintains and operates 94 school buildings and one administration building. There are approximately 63,000 day-school students and 5,000 evening adult students enrolled. The board employs a total of 3,713 persons, of whom approximately 445 are employed as janitors and janitor-engineers. The latter are members of defendant union and are classified as civil service employes.

The board receives approximately 30 percent of its income from state aid and about two percent from federal aid. The balance is made up from tax levies. For the year 1951, the board voted to grant the janitors and janitor-engineers a three percent increase in wages. Negotiations for an increase had been carried on for several months. The employes involved were dissatisfied with the increase granted and served a strike notice on the board stating that on January 8, 1951, they would strike. On the oral argument it appears that after the filing of the order on January 22, 1951, defendants did cease work.

Both parties appear to concede that since January 23, 1951, defendants have been keeping the buildings heated to a temperature high enough to prevent damage from freezing. Because of this fact, at the presentation of the appeal to this court, considerable argument developed as to whether such activity or action on the part of defendants constituted an ordinary strike. Counsel for the board contend that what defendants are doing is a limited work program with an unlawful taking over of the properties. Counsel for defendants insist that their actions constitute an ordinary strike.

Consideration of that situation is not before this court. The question before us is not the propriety of the court's action in the light of what has actually occurred. On January 22, 1951, when the court made its order, no strike had yet occurred. The temporary restraining order was issued upon a verified complaint that a strike was about to occur. In vacating that order and refusing to continue said order in force until final judgment herein, the court treated the original order as an order to restrain a threatened strike. In reviewing the court's decision, we too must assume that the

relief which plaintiff sought was a restraining order and temporary injunction to prevent a threatened strike. The sole question presented by this appeal is whether the court was deprived of jurisdiction to grant the relief sought because of M. S. A. c. 185. That chapter, entitled "Injunctions and Restraining Orders Relating to Labor Disputes," is Minnesota's "Little Norris-LaGuardia Act," popularly so called because of its near identity to the federal Norris-LaGuardia Act, 47 Stat. 70, c. 90, 29 USCA, §§ 101 to 115.

Section 185.10 of our statute provides:

"No court of the state shall have jurisdiction to issue any restraining order, or temporary or permanent injunction, in any case involving or growing out of any labor dispute, to prohibit any person or persons participating or interested in such dispute, * * * from doing, whether singly or in concert, any of the following acts:

"(1) Ceasing or refusing to perform any work or to remain in any relation of employment;"

The act in § 185.18, subd. 4, defines the term "labor dispute" in part as follows:

"The term 'labor dispute' includes any controversy concerning terms or conditions of employment, * * *."

Whether this is a labor dispute must be determined by the complaint herein. It incorporates the strike notice sent to the board, wherein it is stated in substance that Local No. 63, since September 12, 1950, had repeatedly requested the board for an increase in wages and that because of lack of action by the administration a strike vote was taken. The only controversy between the board and the employes relates to wages, which is clearly a controversy concerning terms of employment. It seems impossible to characterize the disagreement as spelled out in the complaint as anything but a labor dispute between the board of education, a public body, and a labor union composed of its employes.

Relying mainly upon the decision of the United States Supreme Court in United States v. United Mine Workers of America, 330 U. S. 258, 67 S. Ct. 677, 91 L. ed. 884, plaintiff contends that

M. S. A. c. 185 has no application to the case at bar. The United Mine Workers case arose in 1946, when, under the War Labor Disputes Act, 57 Stat. 163, c. 144, 50 USCA, §§ 1501 to 1511, the federal government had seized and was operating the major portion of the country's bituminous coal mines. A dispute arose over the terms of an agreement between the government and the miners, and in anticipation of a strike the government secured a temporary restraining order. The miners ignored the restraining order and went on strike. In an action to punish the United Mine Workers and its president for contempt, a decision was rendered against the union, which was taken directly to the United States Supreme Court for review by certiorari. In the Supreme Court the justices split three ways on different aspects of the case, but a majority of five justices were of the opinion that the Norris-LaGuardia Act, which restricts the issuance of injunctions in labor disputes, had no application to the facts of that case. The majority of the court refused to apply the Norris-LaGuardia Act, relying in the main on a general doctrine excluding the government from the operation of a statute in which it is not named and on the legislative history of the act. Undoubtedly as a result of the decision in that case by the United States Supreme Court (filed March 6, 1947), where the court split on the question involved here, the congress of the United States included § 305 of Title III in the Labor Management Relations Act, 1947 (enacted June 23, 1947), 61 Stat. 136, c. 120, 29 USCA, § 188, which reads:

"It shall be unlawful for any individual employed by the United States or any agency thereof including wholly owned Government corporations, to participate in any strike. Any individual employed by the United States or by any such agency who strikes shall be discharged immediately from his employment, and shall forfeit his civil service status, if any, and shall not be eligible for reemployment for three years by the United States or any such agency."

Thus, the federal government has, by this legislation, set at rest the question whether the Norris-LaGuardia Act applies in a situa-

tion involving a strike against the government as an employer by making such strikes unlawful. Congress must have considered the need for such clarifying legislation in view of the diversity of opinion among the members of the Supreme Court as to the application of the federal anti-injunction act in labor disputes where the government is the employer.

The Minnesota act (M. S. A. c. 185), although modeled after the Norris-LaGuardia Act, contains one feature which materially distinguishes it from the federal act. Section 185.19 of the Minnesota act provides:

"Sections 185.07 to 185.18 [L. 1933, c. 416, § 15] shall not be held to apply to policemen or firemen or any other public officials charged with duties relating to public safety."

This exception must refer to persons who are not employed by a private employer. The only other employer would be a public employer. Section 185.19 means that a municipality is not prevented from seeking and receiving injunctive relief against these designated employes if the facts otherwise warrant such relief. But a municipality has numerous employes who cannot come under any of these excepted classes. Janitors and janitor-engineers employed by the board of education are plainly not "officials charged with duties relating to public safety." If the statute specifically enumerates the employes against whom the municipality may obtain injunctive relief under M. S. A. c. 185, it would seem that it would be prevented from seeking such relief against its other employes, except as provided under c. 185. This interpretation of the statute is in accord with the well-settled rule that where a statute designates an exception, proviso, saving clause, or a negative, the exclusion of one thing includes all others. If the act had excluded from its application all public employes, then, of course, the threatened strike could have been enjoined if the facts pleaded had in other respects warranted injunctive relief. The exclusion clause indicates that the act was intended to apply to all other employes. In The Maytag Co. v.

Commr. of Taxation, 218 Minn. 460, 463, 17 N. W. (2d) 37, 40, we stated:

"* * * Where a statute enumerates the persons or things to be affected by its provisions, there is an implied exclusion of others. [Citing cases.] The maxim operates conversely where the statute designates an exception, proviso, saving clause, or a negative, so that the exclusion of one thing includes all others."

See, also, Northwestern Hospital v. Public Building S. E. Union, 208 Minn. 389, 294 N. W. 215.

M. S. A. c. 185 deals with the power of the court. The earliest statute in this state limiting the authority of courts to issue injunctions in labor disputes was L. 1917, c. 493. That statute was incorporated as §§ 4255 to 4260 in both G. S. 1923 and Minn. St. 1927. Its provisions now appear in M. S. A. 185.01 to 185.06, inclusive. The language of those sections gives no clear indication as to whether or not they apply to labor disputes between a municipality and its employes. Not until 1931 does it appear that any attempt was made expressly to exclude public employes from the operation of our anti-injunction statute. In that year, an anti-injunction bill, designated S. F. 385, was introduced in the Senate, which, as amended, would have excluded from its provisions "persons elected, appointed, or employed by the state or any governmental subdivision or department therein." See, Journal of the Senate, 1931, pp. 475, 476. This bill failed to get a special order in the Senate and was thus defeated. See, Journal of the Senate, 1931, p. 817. In 1933, a bill substantially copied from the Norris-LaGuardia Act was introduced in the House as H. F. 1255 and was referred to the committee on labor. See, Journal of the House, 1933, p. 688. The labor committee referred the bill back "with the recommendation that the bill do pass, and subject matter be re-referred to committee." See, Journal of the House, 1933, p. 909. The committee on labor reported the bill back with a number of amendments. One amendment was to—

"Insert new section as follows:

"Section 15. This Act shall not be held to apply to policemen or firemen or any other public officials charged with duties relating to public safety." Journal of the House, 1933, p. 1111.

The bill, as amended, was enacted into law by L. 1933, c. 416, and the above amendment became M. S. A. 185.19.

It is apparent from this legislative history that the legislature considered the bill applicable to public employes. Otherwise, there would have been no need for § 185.19, which excepts the persons designated therein from the operation of the statute. Furthermore, this legislative history shows that the legislature did consider whether public employes should be excepted from the provisions of M. S. A. c. 185, and, having done so, concluded that there should be an exception only for policemen, firemen, and any other public officials charged with duties relating to public safety. Although we do not consider it necessary to look beyond the plain language of § 185.19 and the legislative history of c. 185 to reach the conclusion stated above, it is significant to note that since enactment of the Little Norris-LaGuardia Act several attempts have been made in our legislature to prohibit strikes by public employes. Bills for that purpose were introduced in 1943 (S. F. 208 and H. F. 580) ; in 1945 (S. F. 7 and S. F. 503) ; and in 1947 (S. F. 92). The 1943 legislation passed both houses but was killed by executive veto. The legislation in 1945 and 1947 passed the Senate but did not come up for a vote in the House. If the legislature considered strikes by public employes enjoinable notwithstanding the provisions of the Little Norris-LaGuardia Act, it does not seem likely that members of the legislature would consider it necessary to propose new legislation to prohibit strikes in public service.

The Minnesota Labor Relations Act, § 179.18, subd. 3, specifically excludes all public employes. No machinery has been set up to assist in the adjustment of disputes between municipalities and their employers such as we have here. The anti-injunction act specifically excludes only certain designated classes of municipal

employes. As already stated, it seems clear that among those not excluded from the provisions of the latter act are janitors and janitor-engineers, since their official duties have no relation to public safety.

For the reasons set forth above, we are of the opinion that the court, under the provisions of c. 185, lacked jurisdiction to grant a restraining order or temporary injunction, at least without complying with the procedural requisites set up by the statute. The facts set out in the verified complaint and the facts testified to at the hearing on the petition for a temporary injunction furnished an inadequate basis for the granting of a restraining order or temporary injunction under the provisions of c. 185.

It is our province in this case to determine the *application* of legislative action, not to revise it. Whatever our individual opinions may be as to the wisdom of the present law or the necessity for further legislation, our duty here is simply to apply the law objectively as we find it.

Order affirmed.