RICHFIELD FEDERATION OF TEACHERS AND OTHERS v.
RICHFIELD EDUCATION ASSOCIATION.

115 N. W. (2d) 682.

June 1, 1962—No. 38,550.

*Joseph E. Hamilton* and *William E. Holcomb,* for relator.

*Walter F. Mondale,* Attorney General, and *Henry H. Feikema* and *John F. Casey, Jr.,* Assistant Attorneys General, for respondent Conciliator.

*Howard, Peterson, LeFevere, Lefler & Haertzen,* for respondent School Board.

*Roger A. Peterson* and *Helgesen, Kane, Peterson & Engberg,* for respondent Federation.

*Peterson & Popovich,* for Minnesota School Boards Association, amicus curiae.

*Sigal, Savelkoul & Cohen,* for Minnesota AFL-CIO Federation of Labor, amicus curiae.

UPON REARGUMENT

OTIS, JUSTICE.

The order which is here for review was issued on June 6, 1961, by Richard E. Wanek, the State Labor Conciliator. It called for an election on September 25, 1961, by employees of respondent Richfield Board of Education, Independent School District No. 280, hereinafter called the School Board, to select a representative to meet with the School Board for the purpose of discussing conditions of employment.

The questions to be determined by this court are (1) whether there is a controversy which confers jurisdiction on the Conciliator; (2) whether the Conciliator has authority to designate a unit of employees for purposes of electing a representative; and (3) whether a writ of prohibition is an appropriate remedy.

The relator Richfield Education Association, hereinafter referred to as the Association, and the respondent Richfield Federation of Teachers, hereinafter called the Federation, are voluntary unincorporated organizations whose members are teachers in the Richfield school system, employed by the respondent School Board.

For some years it has been the practice of the Federation and Association to work out a mutually agreeable salary schedule for presentation jointly to the School Board. Finding themselves unable to reach an agreement, early in March 1961 both organizations requested the State Labor Conciliator to investigate and certify a representative for the purpose of meeting with the School Board, pursuant to the terms of the so-called Public Employees Labor Relations Act. Minn. St. 179.52. The petition of the Federation, dated March 9, 1961, alleges that the following question of representation has arisen:

"The Richfield Federation of Teachers and the Richfield Education

Association have not been able to agree on a salary schedule. The Richfield Education Association has asserted before the employer that its group ought to be given recognition as the representative of the faculty."

The petition further suggests as a unit for collective bargaining the secondary teachers of the Richfield public schools, grades 7, 8, 9, 10, 11, and 12.

The petition of the Association, dated March 10, 1961, alleges as the cause for invoking the act:

"The Richfield Education Association and the Richfield Federation of Teachers have not been able to agree on a joint salary schedule."

The Association suggests as a unit for meeting with the School Board all "certified personnel including K, 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, Administrators, Resource Teachers and other special teachers who hold teachers contracts." The Conciliator proceeded to conduct an investigation for the announced purpose of determining what was an appropriate bargaining unit and to designate the employees eligible to vote in the election. At the beginning of the hearing on March 27, counsel for the Association formally withdrew its petition.

On June 6 the Conciliator issued the following order:

"* * * I, Richard E. Wanek, as Labor Conciliator of the State of Minnesota, do hereby order that an election shall be held on Monday, September 25, 1961, at which time all eligible employees who were working for Independent School District No. 280, Richfield, Minnesota, on September 11, 1961, in the unit composed of all secondary teachers of the Richfield Public Schools in grades 7, 8, 9, 10, 11, and 12, excluding only the superintendents, assistant superintendents, principals and assistant principals, the director of secondary education, the director of recreation, and the purchasing agent, may vote.

"The question on the ballot shall be: 'Do you wish the Richfield Federation of Teachers to be your representative for the purposes of meeting with the Richfield Board of Education, Independent School District No. 280, Richfield, Minnesota, with respect to grievances and conditions of employment as stated in Minnesota Statutes 179.52?' "

The School Board has, by writ of certiorari, on June 26, 1961, invoked the jurisdiction of the Ramsey County District Court to review this order, but those proceedings have been held in abeyance pending the disposition of the Association's petition for a writ of prohibition in this court. On August 14, 1961, we issued a writ of prohibition enjoining the Labor Conciliator from proceeding with the proposed election and staying further proceedings pending a decision as to whether the writ should be made absolute. Thereafter, on November 15, 1961, the matter was submitted to the court on briefs.

◼ Since the members of the Association and the Federation are public employees, they are prohibited by law from participating in a strike against their employer, the Richfield School Board. Having been denied the benefits available to employees in private industry under the Labor Relations Act, c. 179, public employees have been accorded the right to pursue grievance procedures prescribed in §§ 179.51 to 179.58. Under §·179.52,

"* * * public employees shall have the right to designate representatives for the purpose of *meeting* with the governmental agency with respect to grievances and conditions of employment. * * *" (Italics supplied.)

The statute further provides that when a question concerning the representation of employees is raised, an interested party may request the Conciliator to investigate "such controversy" and certify the representatives that have been designated. For this purpose the Conciliator shall conduct an election.

Not only has the Association withdrawn its petition requesting that it be certified as the representative of the Richfield teachers, but it has conceded for the record that the Federation represents a majority of the teachers in grades 7 through 12. The only issue which the Association raises is the authority of the Conciliator to designate a unit or units among the employees of the Richfield School Board for purposes of determining representation in meeting with the School Board to discuss grievances or conditions of employment.

The respondent School Board has gone on record in these proceedings as being willing to meet with representatives of both the Feder-

ation and the Association, either separately or jointly, which in itself would seem to obviate the need for an election.

If a public employer refuses to recognize the representative designated by its employees to meet and discuss employment problems, clearly the jurisdiction of the Conciliator may be invoked under the third paragraph of § 179.52. But this is not such a case.

Whether or not in the instant case the Conciliator has jurisdiction depends on the facts alleged in the petition of the Federation. That petition does not allege an inability to come to terms with the employer but only an inability to reach an accord with fellow employees. It does, however, allege that the Association has asserted the right to represent the faculty. The Association having now withdrawn any claim to representation in grades 7 through 12 and having conceded that the Federation represents a majority of those teachers, there is presently no controversy either between the employees or between the employer and employees with respect to representation. We therefore hold that the Conciliator is without jurisdiction to proceed with the election ordered by him on June 6, 1961. In this conclusion we are supported by our decision in Nemo v. Local Joint Executive Board, 227 Minn. 263, 35 N. W. (2d) 337, 811. There the employer invoked the jurisdiction of the Labor Conciliator by asking for an investigation to determine whether Local 556 should be certified as the representative of all employees, and accordingly the Conciliator ordered an election. On the petition of Local 556, we issued a writ of prohibition enjoining the Conciliator from proceeding further because Local 556 conceded that it did *not* represent a majority of the employees. Here the rival organization does not dispute the fact that the petitioner represents a majority of the employees in the unit designated by the Conciliator. Since neither the employer nor any other employee in the instant case questions the petitioners' claim, except as it bears on the issue of designating a unit, we find this matter governed by the Nemo decision. We there specifically held (227 Minn. 271, 35 N. W. [2d] 342):

"While this question has not come before us heretofore, it seems apparent that under our act, before there can be an investigation or

election, there must be a controversy. We do not question the right of the employer to invoke the powers of the conciliator when an individual or organization presents a contract for his signature, as was done in this case, but when it appears to the conciliator that a controversy no longer exists concerning bargaining representatives the right to proceed with the investigation ceases and he can go no further."

■ Under the Labor Relations Act applicable to private industry, the Conciliator has the duty of designating the appropriate unit to select a representative to negotiate with the employer. § 179.16, subd. 2. That statute specifically excludes supervisory employees in choosing a bargaining agent. There is no comparable provision authorizing unit representation under the act governing public employees. This may lead to some awkward and unwieldy situations. Large units of government employ many persons whose skills, training, and experience vary greatly, and whose individual duties may range from the most menial assignments to the most highly specialized professional responsibilities. In such situations unit representation would seem logical and desirable. While we leave to future legislatures the task of anticipating and preventing the problems which may result from the failure to authorize unit representation, it is well to point out that nothing in the act prevents public employees from agreeing among themselves on what crafts, professions, or groups shall constitute a unit for purposes of meeting with their employer. If under such circumstances a controversy arises over the percentage of the unit for whom one or more of the designated representatives purports to speak, there is no reason why the jurisdiction of the Conciliator cannot be invoked to investigate and hold an election with a view to certifying the extent of support which each representative has within that particular unit.

In the instant case there are less than 500 employees involved, most of them teachers, and we are not persuaded that, even if the employer insists on meeting with only one representative, inequitable consequences will follow. Clearly, § 179.16, subd. 2, applies only to private industry and the legislature must be presumed to have intended to omit it by failing to embody any similar provision in the act governing public employees. As Mr. Justice Holmes said in Wheeler v. Greene, 280 U. S. 49, 51, 50 S. Ct. 21, 74 L. ed. 160, 162:

"\* \* \* When so important a grant of power contained in the prototype is left out from the copy it is almost impossible to attribute the omission to anything but design, or to believe that it left to very attenuated implications what the model before it so clearly expressed."

It is our duty to attempt to discover and effectuate the legislative intent without reaching an absurd result. Grushus v. Minnesota Min. & Mfg. Co. 257 Minn. 171, 174, 100 N. W. (2d) 516, 519. The Labor Relations Act refers to employer units, craft units, and plant units. We cannot say that these designations are so appropriate to public employees as to require us to transplant them by judicial construction. With respect to a criminal statute, we held in State v. Moseng, 254 Minn. 263, 269, 95 N. W. (2d) 6, 11:

"Where failure of expression rather than ambiguity of expression concerning the elements of the statutory standard is the vice of the enactment, courts are not free to substitute amendment for construction and thereby supply the omissions of the legislature."

We hold accordingly that the Conciliator has no implied authority to specify units of representation for purposes of implementing the provisions of the act governing meetings between public employers and public employees under § 179.52.

■ The remaining question has to do with the propriety of reviewing the order of the Conciliator by writ of prohibition rather than permitting the proceedings to take their usual course through the district court by writ of certiorari. The conditions under which a writ of prohibition may issue have recently been reviewed in State v. Hartman, 261 Minn. 314, 112 N. W. (2d) 340. It is available only where judicial or quasi-judicial power is about to be exercised in a manner unauthorized by law, resulting in injury for which there is no other adequate remedy. In the instant case the only real issue is whether relator has made sufficient showing of irreparable harm. In the Hartman case we spoke of the necessity for a showing that relator cannot obtain substantial justice except by the issuance of the writ. In State ex rel. Chesley v. Wilcox, 24 Minn. 143, 147, we called attention to the fact that existence of other remedies is not in itself sufficient to

deny relator relief. In State ex rel. Minnesota Nat. Bank v. District Court, 195 Minn. 169, 172, 262 N. W. 155, 157, we held that the rule requiring an application for relief to the lower court is one of practice and that litigants—

"* * * should not be subjected to useless delays, fruitless proceedings, and avoidable expense out of slavish devotion to a mere rule of procedure. Having the jurisdiction, we should take that course which will as far as possible prevent futile and avoidable delay."

In the Nemo case we found sufficient justification for issuing the writ of prohibition by virtue of the relator's contention that it would suffer injury to its prestige following an adverse election and because of the harm inherent in the inevitable delay in litigation which would result from our failure to entertain jurisdiction.

It is not our function to prejudge jurisdictional issues in the ordinary case without affording the trial court an opportunity to pass on the matter. But where the facts are not in dispute, and the record conclusively demonstrates that the lower tribunal is about to act without authority, practical considerations of justice require us to terminate the litigation. To do otherwise would subject the parties unnecessarily and futilely to the expense, vexation, and distractions inevitable in all protracted litigation.

We have considered the Conciliator's contention that under J. F. Quest Foundry Co. v. International M. & F. W. Union, 216 Minn. 436, 13 N. W. (2d) 32, his decision was not a final order which may be corrected by a writ of prohibition. However, we conclude that this issue has been laid to rest by our holding in the Nemo case that lack of jurisdiction obviates our consideration of this question.

Accordingly, we hold that there has been a sufficient showing to justify the issuance of the writ. The motions to quash the writ are therefore denied and it is made absolute.

The opinion filed herein on February 16, 1962, is withdrawn and the foregoing opinion is substituted in place thereof.

Mr. Justice Frank T. Gallagher took no part in the consideration or decision of this case.