STATE of Minnesota, by its Attorney
General, Hubert H. HUMPHREY,
III, Respondent,

v.

CASINO MARKETING GROUP,
INC., Defendant,

Larry J. Hall, a/k/a "Bud Hall" d/b/a
"721 Associates" and d/b/a "Associated
Marketing," Appellant.

STATE of Minnesota, by its Attorney
General, Hubert H. HUMPHREY,
III, Respondent,

v.

UNIVERSAL AMERICAN CREDIT
CARD, INC., Respondent,

Larry J. Hall, a/k/a "Bud Hall" d/b/a
"721 Associates" and d/b/a "Associated
Marketing," Appellant.

No. C1-91-598.

Court of Appeals of Minnesota.

Oct. 8, 1991.

Review Granted Dec. 4, 1991.

**506**

Hubert H. Humphrey, III, Atty. Gen. and James Paul Jacobson, Sp. Asst. Atty. Gen., St. Paul, for the State.

Randall D.B. Tigue, Minneapolis, for appellant.

Robert M. Lindstrom, Minneapolis, for Universal American Credit Card, Inc.

Considered and decided by PARKER, P.J., and FORSBERG, and AMUNDSON, JJ.

## OPINION

FORSBERG, Judge.

Larry Hall appeals from the trial court's grant of respondent State of Minnesota's motion for a temporary injunction prohibiting him from using automatic-dialing announcing devices (ADADs). We affirm.

## FACTS

Hall is a Minnesota resident doing business under the names "721 Associates" and "Associated Marketing." He is also the agent for Casino Marketing Group, Inc., a Nevada corporation, and Universal American Credit Card, Inc., a Texas corporation. Hall's businesses include conducting commercial telephone solicitations for the sale of travel services and credit cards to Minnesota consumers, as defined in Minn. Stat. § 325E.26, subd. 4 (1990). These telephone solicitations are placed by ADADs which deliver prerecorded voice messages. The solicitations are placed without a live operator to announce the business' name, explain the message's purpose, or identify the services or goods being promoted. The

calls are also placed without the prior consent of the called persons. It is undisputed that this type of telephone solicitation violates Minn.Stat. §§ 325E.27 and .29.

Upon discovering the unlawful solicitations, the state commenced two actions to enjoin Hall. A state investigator alleges by affidavit that during 1990, the attorney general received 805 written complaints concerning telemarketing, 60 of which involved prerecorded telephone solicitations.

In his affidavit, Hall claims his sole source of income is from using the ADADs. He acknowledges ADADs can be programmed to exclude telephone numbers of those who do not want unsolicited calls. Further, he insists enforcement of the present statute, which requires a live operator, removes any advantage from using ADADs.

The two cases were consolidated for hearing. Hall argued the statutory restrictions on using ADADs are facially unconstitutional and unconstitutional as applied to him. He also sought an injunction to restrain the state from enforcing the statute.

In granting the state's temporary injunction motion, and implicitly denying Hall's cross-motion, the trial court concluded: (1) Hall will unlikely prevail on his constitutional claim; (2) nothing about the parties' relationship favors injunctive relief to Hall; (3) the state's public policy concerns in protecting its citizens outweighs Hall's interest in using the ADADs; and (4) no administrative burdens would hinder effective enforcement and supervision of the temporary injunction.

## ISSUE

Did the trial court abuse its discretion by granting a temporary injunction restricting Hall's use of ADADs for commercial telephone solicitations?

## ANALYSIS

■ The grant of a temporary injunction rests within the sound discretion of the trial court, and its decision will not be disturbed on appeal unless there has been

an abuse of such discretion. *Cherne Indus., Inc. v. Grounds & Assocs., Inc.*, 278 N.W.2d 81, 91 (Minn.1979). In determining whether to reverse or affirm a grant of temporary injunction, an appellate court considers five factors: (1) the nature and background of the parties' relationship; (2) the relative harms to be suffered by the parties; (3) the likelihood of success on the merits; (4) public policy concerns; and (5) administrative burdens involved in judicial supervision and enforcement. *Dahlberg Bros., Inc. v. Ford Motor Co.*, 272 Minn. 264, 274–75, 137 N.W.2d 314, 321–22 (1965).

■ The critical issue in this case is whether the state will likely succeed on its claim that Hall should be permanently enjoined. This issue in turn depends upon whether Hall will succeed in his claim that the ADAD statute violates the first amendment. The first amendment extends protection to commercial speech. *Bigelow v. Virginia*, 421 U.S. 809, 821, 95 S.Ct. 2222, 2232, 44 L.Ed.2d 600 (1975). Commercial speech, however, only enjoys a limited measure of constitutional protection and is therefore subject to regulation impermissible in the realm of noncommercial expression. *Board of Trustees v. Fox*, 492 U.S. 469, 472, 109 S.Ct. 3028, 3033, 106 L.Ed.2d 388 (1989) (quoting *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 456, 98 S.Ct. 1912, 1918, 56 L.Ed.2d 444 (1978)).

■ The Supreme Court has set forth a four-part test to determine the lawfulness of restrictions on commercial speech. A court must determine whether (1) the speech deserves first amendment protection, (2) the asserted governmental interest is substantial, (3) the limitation "directly" advances the asserted governmental interest, and (4) the limitation is not more extensive than "necessary" to serve the governmental interest. *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n*, 447 U.S. 557, 566, 100 S.Ct. 2343, 2351, 65 L.Ed.2d 341 (1980). A restriction on commercial speech must pass each of these to be constitutionally permissible. We believe the trial court in this case did not err in concluding Minn.Stat. §§ 325E.26–.31 likely meets the *Central Hudson* test, and therefore acted within its discretion in granting the state's temporary injunction motion.

■ First, illegal or misleading speech does not deserve constitutional protection. *Id.* at 563, 100 S.Ct. at 2350. While the state claims the telephone solicitations in this case are misleading, the trial court concluded there was insufficient evidence at this stage of the proceedings to make such a determination. We therefore do not reach this issue. Of course, should the trial court find the solicitations are misleading, they would deserve no constitutional protection.

The second inquiry is whether the asserted governmental interests in restricting the use of ADADs are substantial. The statute requires that a live operator obtain the consumer's consent, explain the message's purpose, identify the services or goods promoted, and identify the entity for which the call is made before the outset of the recorded message. Minn.Stat. §§ 325E.27 and .29. The state offers two interests to justify these restrictions: to protect the privacy expectations of its citizens and to prevent fraudulent or misleading telephone solicitations.

We believe these interests are substantial. Citizens should enjoy a heightened degree of privacy in their own homes, and intrusions into residential privacy, such as the unsolicited telephone advertisements in this case, require immediate attention. *See, e.g., Fox*, 492 U.S. at 475, 109 S.Ct. at 3032 (preserving residential tranquility provides substantial governmental interest to prohibit demonstration of commercial product in university dormitories in face of first amendment challenge); *Bread v. City of Alexandria*, 341 U.S. 622, 645, 71 S.Ct. 920, 934, 95 L.Ed. 1233 (1951) (court upheld conviction for selling magazine subscriptions in violation of city ordinance outlawing door-to-door solicitation). In addition, the state has a substantial interest in preventing deceptive advertising and ensuring consumers receive accurate information when a telemarketer presents a solicitation.

With respect to the third inquiry, we conclude the requirement of a live operator advances the state's interests in privacy

and preventing fraud. By requiring a live operator, the ADAD statute permits the consumer to decide at the beginning of the call whether the solicitation is worth interrupting her activities. Further, the consumer may ask questions of the operator to make informed decisions about the solicitation. In addition, by identifying the entity for which the call is made and explaining the call's purpose, the operator may alert the consumer to overreaching and deceptive sales practices.

Finally, the statutory restrictions on ADAD solicitations are not more extensive than necessary to serve the state's interests. This inquiry requires a reasonable "fit" between the legislature's aim and the means chosen to accomplish it. *Fox*, 492 U.S. at 480, 109 S.Ct. at 3035. The fit does not necessarily require the least restrictive means; instead, the means must be "in proportion to the interest served." *Id.* (quoting *In re R.M.J.*, 455 U.S. 191, 203, 102 S.Ct. 929, 937, 71 L.Ed.2d 64 (1982)). In view of the intrusive effect of ADAD solicitations and the potential for fraud and overreaching, the legislature's decision to require a live operator amounts to a reasonable fit.

■ Two corollary issues also require our attention. First, Hall argues the trial court applied the improper legal standard in examining the validity of the ADAD statute. The trial court concluded a strong presumption exists in favor of a statute's constitutionality and a statute's invalidity must be proved beyond a reasonable doubt. *See Minneapolis Fed'n of Teachers v. Obermeyer*, 275 Minn. 347, 356, 147 N.W.2d 358, 365 (1966). Generally, this presumption of constitutionality does not apply to laws restricting first amendment rights. *Johnson v. State Civil Serv. Dep't*, 280 Minn. 61, 66, 157 N.W.2d 747, 751 (1968). Nonetheless, plain commercial speech is not granted the high standard of protection other first amendment rights receive. *Fox*, 492 U.S. at 472, 109 S.Ct. at 3033. For this reason, statutes restricting commercial speech properly bear a strong presumption of constitutionality.

■ Second, Hall argues the ADAD statute is a prior restraint. Prior restraints on speech are not tolerated. *See, e.g., New York Times Co. v. United States*, 403 U.S. 713, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971). However, unlike illegal prior restraints, which entirely suppress the distribution of the protected communication, the ADAD statute in this case merely regulates the manner by which certain telephone solicitations may be presented to consumers.

## DECISION

The trial court acted within its discretion by enjoining appellant's use of ADADs for commercial telephone solicitations.

Affirmed.