(121 N. .W 1114.)

---

STATE OF NORTH DAKOTA EX. REL. DON McDONALD v. H. L. HOLMES, AUDITOR OF THE STATE OF NORTH DAKOTA.

Opinion filed December 28, 1909.

**Preliminary Questions — Lack of Merit.**

1. Certain preliminary question *held* without merit.

**Mandamus — Remedy at Law.**

2. The more adequate and speedy remedy which a suitor must possess to defeat his right to a mandamus is a legal remedy rather than a physical one.

**Appropriations — Limitations.**

3. It is essential, to constitute a legislative "appropriation," that the act of the legislature, attempting to make such an appropriation, limit the amount of the state's funds which may be applied to the purpose contemplated by the act, as otherwise the officials of the state would have no means of determining the amount of tax to be levied to meet the demands of claimants, and the revenues of the state might be exhausted without the legislature intending to appropriate them wholly to the subjects covered by such acts.

**Constitutional Law — Appropriations — General and Specific Appropriation.**

4. The last sentence of section 62 of the Constitution, which reads: "All other appropriations shall be made by special bills, each em-

bracing but one subject"—is equivalent to requiring a specific appropriation for each subject other than those embraced · in the general appropriation bill.

### Constitutional Law — Appropriations.

5. To constitute an appropriation under the provisions of the Constitution of this state, quoted in the opinion, an act must set apart from the public revenue a definite sum of money for the specific object in such a manner that the state officials are authorized to use the amount so set apart, and no more, for that object.

### Appropriations — Limitation of Amount.

6. ·Chapter 139, page 185, Laws 1903, providing for the payment ·of a reward to persons who shall secure the arrest and conviction of violators of ·chapter 63 ·of the Penal Code of 1899, known as the "Prohibition Law," while creating an obligation on the part of the state to pay the rewards earned under the terms of that ·chapter, is inadequate as an appropriation, and does not authorize the auditor to draw his warrant ·on the state treasurer for the sums so earned, for the reason that the act does not ·limit the total amount which may be paid as such rewards in any year.

Appeal from District Court, Grand Forks county; *Templeton, J.*

Mandamus by the State, on relation of Don McDonald, against H. L. Holmes, as State Auditor. From a judgment awarding a peremptory writ, defendant appeals.

Reversed.

*Thomas F. McCue* and *Andrew Miller,* Attorneys General, and *Alfred Zuger* and *C. L. Young,* Assistant Attorneys General, for appellant.

*J. B. Wineman,* for respondent.

SPALDING, J.   This is an appeal from an order and judgment of the district court of Grand Forks county, directing the auditor of the state of North Dakota to forthwith attest, issue and deliver a warrant in the sum of $100 to the treasurer of the state, to be by such treasurer credited to the county of Grand Forks in his settlement with the treasurer of that county, as provided by chapter 139, page 185, of the Laws of 1903. An alternative writ of mandamus was first issued by that court, and to it the appellant demurred. The judgment awarding the peremptory writ of mandamus resulted from an order of the district court overruling such demurrer. The first objection is that, inasmuch as the state auditor's official residence is in Bismarck, in the Sixth judicial district, the district court of the First judicial district had no jurisdiction

to mandamus that official. The record fails to disclose any objection in district court, and no demand was made that the proceeding be transferred to the district court of Burleigh county in the Sixth district, and the subject, while pointed out, is not discussed in the brief of the appellant. It is objected in the second place that McDonald, the county treasurer of Grand Forks county, on whose relation the proceeding was instituted, is not shown to have such an interest in the proceeding as to authorize him to bring the same, either in person or in the name of the state. The treasurer being liable to the county on his bond for the proper accounting for the funds belonging to the county, and having paid the money from the treasury, is beneficially interested, and may properly act as relator. No authorities are cited by appellant on this point. It is next contended that the relator had a more adequate and speedy remedy by means of withholding the money so paid out in his settlement with the state treasurer. It is self-evident that, if he had no right to withhold it, the ability or opportunity to do so does not furnish a remedy which can be considered in a legal proceeding. The remedy, in the eyes of the law, which defeats the right to mandamus, is a legal remedy rather than a physical one.

The main contention, as we are advised, in the district court, and the one on which its judgment was rendered, was to the effect that chapter 139, p. 185, Laws 1903, had been repealed by chapter 187, p. 303, Laws 1907, known as the "Temperance. Commissioner Law." This contention is abandoned in this court, and, were this the only question involved, the order and judgment of the district court would undoubtedly be affirmed. Other questions have been discussed here of such a nature that, even though not called to the attention of the trial court, they must be considered by this court. Chapter 139, p. 185, Laws 1903, omitting the title, reads as follows:

"1.   The sum of fifty dollars shall be paid to any person or persons for the arrest and conviction of each and every person who violates any of the provisions of chapter 63 of the Penal Code of the state of North Dakota, which amount shall be paid to the person or persons entitled thereto, on the presentation of a certificate issued as hereinafter provided from the state's attorney of the county where such conviction was had setting forth the object for which the same was issued to the treasurer of the proper county; and said treasurer shall take a receipt for the same, setting forth

the object for which it was paid, which certificate and receipt shall be forwarded to the state auditor, who shall, at the next settlement, place a warrant for such amount in the hands of the state treasurer to be credited on the settlement with said county treasurer.

"2. Any person or persons claiming such reward shall, within twenty days after the conviction of the criminal, apply to the state's attorney of the county wherein such conviction was had, who shall thereupon issue to such claimant the certificate provided for in section 1 hereof."

Section 62 of the Constitution reads: "The general appropriation bill shall embrace nothing but appropriations for the expense of the executive, legislative and judicial departments of the state, the interest on the public debt and for public schools. All other appropriation shall be made by special bills, each embracing but one subject." Section 186 of the Constitution provides that no money shall be paid out of the state treasury except on appropriation by law and on warrant drawn by the proper officer. The Constitution (section 174) requires the legislature to provide for raising revenue sufficient to defray the expenses of the state for each year, not to exceed in any one year four mills on the dollar of the assessed valuation of the taxable property in the state, and also a sufficient sum to pay the interest on the state debt.

The important question to be determined on this appeal is, Does chapter 139, page 185, Laws 1903, constitute a valid appropriation of the revenues of the state? Courts have furnished numerous and varying definitions of the word "appropriation," when applied to a legislative act. But it is clear to us that no legal definition of the word can be given applicable to all states; that the provisions of the constitution of the state whose law is being construed must be taken into consideration. Under the terms of some constitutions provisions made by the legislature for the payment of obligations of the state may be appropriations which, under the terms of others, would be inadequate, and would furnish no warrant for the payment of money by the state officials. Section 62 seems to contemplate that each legislative assembly shall, in one act, make appropriations for the various purposes or subjects enumerated therein, and that it shall be known as the "General Appropriation Act," and that out of the appropriations made by that act the disbursements coming within the terms of section 62, or belong-

—19—

ing to the departments, or intended for the purposes therein named, shall be paid. To our surprise we find, on an examination of the appropriation acts since statehood, that no such law has been enacted, although there are continuing appropriations for many of the objects and purposes covered by that provision, such as salaries of state officers and the like. That section also seems to contemplate a separate act appropriating money specifically for each purpose and object not included in its terms. We find, from examining the authorities, a difference in the corresponding provisions of other constitutions, some using the word "specific" in reference to the payment of money on appropriations requiring a specific appropriation. We are of the opinion that the last sentence of section 62, requiring all other appropriations to be by special bills embracing but one subject, is equivalent to the use of the word "specific." Chapter 139, page 185, Laws 1903, unquestionably comes within the terms of the latter clause of section 62 if it contains all the elements necessary to constitute an appropriation, keeping in view the limitations of the various sections quoted from the constitution. It sets apart the sum of $50 in each case, for the purpose of paying the reward offered in that case or to that person, and provides for making the payment by means of and through the settlement between the respective county treasurers and the state treasurer, but it lacks one element, which, in the light of the provisions referred to, is necessary to constitute or make a valid appropriation. The act nowhere limits the amount which may be drawn from the state treasury in payment of such rewards. It fixes the amount of each reward, but, as it is self-evident that the number of rewards to which persons may be entitled is unknown, the amount which may be demanded of the treasury for that purpose cannot be ascertained and provided for. The revenues of the state are limited by section 174 to four mills on the dollar. The debt limit is fixed by the constitution at $200.000. If the chapter in question is adequate as an appropriation, and as there is no limit to the number of such acts the legislature may pass, or the number of rewards or similar demands which may be made on the treasury cannot be foretold, the entire revenues of the state might readily be exhausted in their payment. The amount accruing to claimants may, and naturally will, far exceed the anticipations of the legislators, and no check be furnished upon the officials or protection given the treasury. The purpose of limit-

ing by law the amount which may be expended for a definite purpose, and requiring that it be stated in the act relating to the particular subject, is to enable the Legislature and state officials to approximate in advance the total amount of appropriations made so they may be kept within the power of the state to pay. Under the provisions of our Constitution we are forced to conclude, particularly to prevent the practical nullification of section 174 of the Constitution, that a legislative act, in order to constitute an appropriation authorizing the payment of funds or the drawing of a warrant, must fix a limit on the amount which may be paid out under the subject covered by the act. Had the Legislature used language in addition to the terms of chaper 139, p. 185, Laws 1903, which placed a limitation upon the total amount which might be paid to claimants as rewards, the objection would doubtless be obviated, but, as it stands, chapter 139, p. 185, Laws 1903, while creating an obligation on the part of the state to pay, does not authorize payment. The act does not set apart any definite or ascertainable sum for the purpose of paying these rewards, nor fix any limit above which payments cannot be made. From a careful consideration of the authorities on the subject and of the terms of our Constitution, we think an appropriation, in the sense that that word is used in our Constitution, is the setting apart from the public revenue of a definite sum of money for the specified object in such a manner that the officials of the government are authorized to use the amount so set apart, and no more, for that object. Many authorities are found on the subject of "appropriations," but only a few of them are applicable to the question here being considered. A great number relate to the subject of salaries of state officials where fixed either by the Legislature or in the Constitution. Generally, the fixing of a salary of a state official is held to be an appropriation, but authorities on that subject do not meet the question before us. Section 22 of article 4 of the Constitution of California is like section 186 of the Constitution of this state. The Legislature of California passed an act giving a bounty of $5 out of the general fund of the treasury for each coyote killed or destroyed by any person. St. 1891, p. 280, c. 198. The act contained no limit to the number of bounties which might be applied for or paid, nor upon the amount of money which might be expended in payment of such bounties. In Ingram v. Colgan, 106 Cal. 113, 38 Pac. 315, 39 Pac. 437, 28 L. R. A. 191, 46 Am. St. Rep. 221,

this act was passed upon by the Supreme Court of California, which held that it did not constitute an appropriation. That court uses this language: "The fund from which the bounties are to be paid is explicitly designated, but the amount of money in the general fund devoted to the payment of these bounties is not specified. The language lacks the first essential to an effective appropriation. There is no designated amount, and, consequently, there is no specific appropriation to be exhausted, unless it can be said that the whole general fund is set aside as a specific appropriation to the end in view—a proposition not seriously to be considered." In Institute of Education v. Henderson, 18 Colo., 105, 31 Pac. 714, 18 L. R. A. 398, the Supreme Court of that state says: "To permit the disbursement of an indefinite amount of money as these bounty acts contemplate is to introduce an element of uncertainty into these calculations that will seriously embarrass both the Legislature and the departments in giving effect to our state Constitution with relation to the levying of taxes to meet appropriations. If the Legislature desires to pay bounties it may do so for all proper purposes by making the necessary appropriations therefor." The latter case related to the validity of bounty acts which contained no provision limiting the amount which might be expended under them. The court held that the limit of appropriations for any year being fixed by the amount of revenue which might be raised by taxation prevented this act from being operative. In State v. Moore, 50 Neb. 88, 69 N. W. 373, 61 Am. St. Rep. 538, the court had under consideration an act of the Legislature of that state providing for the payment of a bounty to the manufacturers of beet and other sugar, in the sum of five-eighths of one cent per pound. The act provided that when any claim arose thereunder and was filed and verified, and approved by the Secretary of State as therein provided, it should be certified to the Auditor of the State, who should draw a warrant upon the Treasurer for the amount due thereon, payable to the parties named. Section 22, art. 3, of the Constitution of that State, provides that no money shall be drawn from the treasury except in pursuance of a specific appropriation made by law, and on the presentation of a warrant issued by the auditor thereon. The court held that such an act, if held to be an appropriation, might in itself appropriate more than the entire revenue of the state, and that it could not be held to be an appropriation because not certain and limited in

its amount. That court made a careful investigation of authorities, and, after reviewing them, it says: "In no case, however, which we have been able to discover under any constitutional provision, has it been held that an appropriation is valid when it is uncertain ʼin its amount, and that uncertainty arises with regard to the extent of the demands or claims which the recipients of the fund may present against it, on the other hand, in nearly all the cases cited, and in many more which might be cited   *   *   * certainty in amount is treated as an essential requisite of a valid appropriation." We think the cases from which we have quoted are directly in point, and state sound reasons for holding that, in the absence of an ascertainable limit to the amount of   money which may be devoted to the object contemplated, no appropriation is made. We shall not take the time to review other authorities or the history and the principles underlying the subject of appropriations. The history of the subject and of the various restrictions upon legislative bodies, provided for the protection of the public, is an extremely interesting study. Some of the authorities   cited briefly outline it, and a learned discussion will be found in Ristine v. State, 20 Ind. 328. A distinction exists between an appropriation and a fund. The state does not maintain that it is necessary to set apart or designate a fund to make the   act   in   question operative, if it is necessary to place a limit upon the amount which may be paid out of the general fund under the act. It only contends that, when no such limit is placed, a fund must be named from which to make the payments; hence, we do not consider the question of the designation of the fund, which at one time was suggested, as necessary.

The order and judgment of the district court are reversed. All concur.