338 N.W.2d 97 (1983)
AMERICAN FEDERATION OF STATE, COUNTY, AND MUNICIPAL EMPLOYEES, COUNCIL NO. 95, Plaintiff and Appellant,
v.
Allen I. OLSON, Governor of the State of North Dakota; Robert O. Wefald, Attorney General of the State of North Dakota; Duane R. Liffrig, Commissioner of the North Dakota State Highway Department; Darrell Ohlhauser, Acting Director of the Office of Management and Budget of the State of North Dakota; and John Lesmeister, Treasurer of the State of North Dakota, Defendants and Appellees.
Civ. No. 10379.
Supreme Court of North Dakota.
August 22, 1983.
*98 Schneider, Schneider & Schneider, Fargo, for plaintiff and appellant; argued by John T. Schneider, Fargo.
Kathryn L. Dietz and Marilyn Foss, Asst. Attys. Gen., Bismarck, for defendants and appellees; argued by Marilyn Foss, Bismarck. Appearance by Kathryn L. Dietz, Bismarck.
Robert A. Feder, Fargo, for N.D. Public Employees Ass'n. Filed amicus curiae brief.
ERICKSTAD, Chief Justice.
This is an appeal by the American Federation of State, County, and Municipal Employees, Council No. 95 (the Union) from a summary judgment of the District Court of Burleigh County, dated November 29, 1982, dismissing the Union's first four causes of action in its lawsuit against the defendant state officials. The district court entered a Rule 54(b), N.D.R.Civ.P., determination that there was no just reason for delay in entering judgment thereby permitting the Union to file this appeal prior to a final determination of the entire lawsuit. We affirm.
The Union filed this lawsuit during July, 1981, seeking a declaratory judgment and injunctive relief for the defendants' "wrongfully and unconstitutionally denying legislatively appropriated and contractually mandated wage increases" to employees of the State Highway Department represented by the Union. Briefly summarized, the Union's first four causes of action assert:
(1) That the authority given to the Office of Management and Budget under Section 54-44.1-12, N.D.C.C., to withhold appropriated salary increases constitutes an unlawful delegation of legislative authority, and the acts of the Governor and the Director of the Office of Management and Budget under that provision which resulted in employees of the State Highway Department represented by the Union not receiving the full eight percent *99 (8%) salary increase contracted for July 1, 1982, are void;
(2) That the Governor's action in declaring insufficient funds to pay legislatively appropriated salary increases for July 1, 1982, was spurious and constituted an unlawful veto under Article V, Section 10 of the North Dakota Constitution;
(3) That employees of the State Highway Department represented by the Union were denied equal protection under the federal and state constitutions because employees represented by the Grain Miller's Union and state officials received an eight percent (8%) salary increase on July 1, 1982; and
(4) That the collective bargaining agreement entered into between the Union and the State Highway Department is a valid contract under which employees of the Union were entitled to an eight percent (8%) salary increase on July 1, 1982.
The district court entered a summary judgment dismissing the foregoing causes of action from which the Union has now appealed raising the following issues:
(1) Whether or not the district court erred in concluding that the collective bargaining agreement entered into between the State Highway Department and the Union was void; and
(2) Whether or not the district court erred in granting a summary judgment dismissing, as a matter of law, the Union's first four causes of action.
Larry Laschkewitsch, the executive director of the Union, and Walter Hjelle, State Highway Commissioner, entered an agreement entitled Memorandum of Working Rules and Regulations which was to be effective as of July 1, 1981. The agreement provided for recognition of the Union as the exclusive bargaining agent for all employees of the State Highway Maintenance Division:
"The Employer recognizes the Union as the exclusive bargaining agent for all employees of the Highway Department Maintenance Division except clerical, administrative, supervisory and temporary employees. The Employer further agrees to recognize the Union as the representative of other employees of the Highway Department who choose to be represented by the Union provided that the Union presents signed dues deduction forms for more than 50 percent of the employees in such unit that the Union desires to be included under this Agreement.... The Employer will not aid, promote or finance any labor group which purports to engage in collective bargaining or make any agreement with any individual, group or organization for the purpose of undermining the Union or which is in conflict with this Agreement for this bargaining unit."
The agreement covered numerous items regarding the employment relationship between the State Highway Department and employees represented by the Union including the following relevant provisions regarding wages:
"Effective July 1, 1981, all nonprobationary permanent employees shall have their salaries adjusted a minimum of nine (9) percent increase.
* * * * * *
"Effective July 1, 1982, all nonprobationary permanent employees shall have their salaries adjusted a minimum of eight (8) percent increase."
It is undisputed that the salary increases provided for under the contract were equivalent to the maximum salary increases authorized for state employees through appropriations by the 1981 Legislative Assembly.
Employees represented by the Union received a nine percent salary increase on July 1, 1981.
On March 24, 1982, Governor Allen I. Olson wrote a letter to the acting director of the Office of Management and Budget relative to the State's fiscal problems, which provided in relevant part:
"If revenues continue to decline, no salary increases will be allowed for State employees on July 1, 1982. If, on the other hand, revenues and economic conditions *100 generally stabilize, an average salary increase not exceeding four percent will be allowed."
On March 26, 1982, Governor Olson sent a communication to all state agencies and departments regarding fiscal and budgetary constraints which provided in relevant part:
"... if revenues continue to decline, no salary increases will be allowed for state employees on July 1, 1982. If revenues and economic conditions generally stabilize, an average increase not to exceed four percent may be allowed. This policy applies, regardless of the funding source for the appropriation." [Emphasis in original.]
During June, 1982, Duane Liffrig, the State Highway Commissioner at that time, received an attorney general's opinion which concluded that the agreement entered into between Commissioner Hjelle and the Union was not contractually binding. Thereafter, on June 16, 1982, Commissioner Liffrig informed the Union, through a letter written to its executive director, Larry Laschkewitsch, that the State Highway Department "withdraws from participation" in the agreement effective immediately. As a result, employees of the Highway Department represented by the Union did not receive the full eight percent salary increases on July 1, 1982, as provided for in the agreement, and the Union then filed this lawsuit.
The agreement entered into between the State Highway Department and the Union constitutes an exclusive collective bargaining agreement purporting to bind the Highway Department and all employees of the Highway Department Maintenance Division, with the exception of certain specified positions. It is undisputed that there is no express statutory authority for the State Highway Commissioner to enter into collective bargaining agreements. However, the Union asserts on appeal that the Commissioner has an implied authority to enter collective bargaining agreements as an incident to his express authority under Subsection 4 of Section 24-02-03, N.D.C.C.:
"24-02-03. Responsibilities of commissioner. The commissioner shall:
* * * * * *
"4. Employ all engineers, assistants, clerks, agents, attorneys, and other employees, required for the proper transaction of the business of his office, or of the department, fix their titles, determine their duties, the amount of their bonds in the state bonding fund, if any are required, and their compensation, and shall discharge them in his discretion."
The defendant state officials assert that the Commissioner has no authority, express or implied, to enter collective bargaining agreements and that the agreement between the State Highway Department and the Union is void.
It is well-settled that public officials have only such authority as is expressly given them by the constitution and statutes together with those powers and duties which are necessarily implied from the express grant of authority. See, Kopplin v. Burleigh County, 77 N.D. 942, 47 N.W.2d 137 (1951). It is also generally recognized that, absent express statutory authority, public officials do not have authority to enter exclusive collective bargaining agreements with public employees. See, annotation 31 A.L.R.2d 1142 (1953); See also, Commonwealth of Virginia v. County Board of Arlington County, 217 Va. 558, 232 S.E.2d 30 (1977); State Board of Regents v. United Packing House, Etc., 175 N.W.2d 110 (Iowa 1970); Minneapolis Federation of Teachers Local 59 v. Obermeyer, 275 Minn. 347, 147 N.W.2d 358 (1966). However, some courts have recognized an implied power of a public body to enter collective bargaining agreements. See, Dayton Classroom Teachers Association v. Dayton Board of Education, 41 Ohio St.2d 127, 323 N.E.2d 714 (1975); International Brotherhood of Electrical Workers, Local Union No. 611 v. Town of Farmington, 75 N.M. 393, 405 P.2d 233 (1965). Having reviewed numerous case authorities on this subject together with the relevant statutory provisions of this State, we conclude that the State Highway *101 Commissioner does not have implied authority to enter an exclusive collective bargaining agreement such as the one involved in this case between the Highway Department and the Union.
Chapter 34-12, N.D.C.C., the North Dakota Labor-Management Relations Act, authorizes employees to bargain collectively through representatives. The chapter sets forth various safeguards and guidelines pertaining to the collective bargaining process including a provision that the North Dakota Commissioner of Labor shall determine in each case the unit appropriate for the purposes of collective bargaining, a provision for the election by employees of the representative designated to represent the unit, and a provision that the selected representative of the unit shall be the exclusive representative of the employees in the unit.
The state and its political subdivisions are expressly excluded from the definition of employer for purposes of applying Chapter 34-12, N.D.C.C. Consequently, if we were to find an implied authority in the Highway Commissioner to enter exclusive collective bargaining agreements it would be one without benefit of the guidelines and safeguards provided under Chapter 34-12, N.D.C.C. We do not believe the Legislature, in setting forth the Commissioner's responsibilities under Subsection 4 of Section 24-02-03, N.D.C.C., intended to give the Commissioner implied authority to enter collective bargaining agreements absent the type of statutory provisions that were subsequently enacted under Chapter 34-12, N.D.C.C.
The Minnesota Supreme Court in Minneapolis Federation of Teachers Local 59 v. Obermeyer, 275 Minn. 347, 147 N.W.2d 358 (1966), upon holding that a provision of the 1965 Public Employees Labor Relations Act which excepted teachers from application of the Act was not unconstitutional, made the following statement with which we agree:
"Even though courts may sanction voluntary bargaining in the absence of statute, satisfactory results can hardly be expected. A statute is needed to spell out procedures to be used in the determination of majority representatives in an appropriate unit. But this is a legislative concern." [Footnote omitted.] 147 N.W.2d at 367.
The Iowa Supreme Court in State Board of Regents v. United Packing House, Etc., 175 N.W.2d 110 (Iowa 1970), while recognizing an implied authority in the Board of Regents to "confer and consult with representatives" of its public employees in order to make its judgment as to wages and working conditions, refused to find implied authority in the board to enter exclusive collective bargaining agreements. We agree with the Iowa Supreme Court's rationale that creation of the right to enter exclusive collective bargaining agreements should be left to the discretion of the Legislature rather than be imposed by the courts as an implied power incident to an expressed authority of a public official to deal with employer-employee relations:
"[I]f the legislature desires to give public employees the advantages of collective bargaining in the full sense as it is used in private industry, it should do so by specific legislation to that effect. We cannot imply authority under these general powers to agree to exclusive representation, depriving other employees of the right to be represented by a group of their choosing or an individual the right to represent himself. Dole, in 54 Iowa L.Rev. 539, presents many sound reasons why collective bargaining, with limitations, should be authorized for public employees. But the limitations, provisos and exceptions which the author suggests should be imposed by the court in implying the power to bargain collectively are persuasive arguments for holding it is a matter for the legislature, not the courts." 175 N.W.2d at 113.
In Commonwealth of Virginia v. County Board of Arlington County, 217 Va. 558, 232 S.E.2d 30 (1977), the Virginia Supreme Court was confronted with a similar issue of whether or not express powers granted to a county board and a county school board to hire employees and to fix the terms and conditions of their employment, included an *102 implied power to bargain collectively with labor organizations. The Virginia Supreme Court concluded that to find an implied power would result in an unreasonable strained application of the doctrine of implied powers by creating or expanding an existing power beyond rational limits. In so concluding, the Virginia Supreme Court stated in relevant part:
"[T]he boards say that the two legislative enactments, previously noted, relating to collective bargaining rights of employees of transportation districts, support the proposition that the boards presently possess the power to bargain collectively. We disagree. Approval of the concept of collective bargaining in this narrow and select public field is not an indication of legislative intent to embrace the concept generally. Indeed, the contemporaneous disapproval of the various proposals to confer general collective bargaining authority is another indication that legislative intent is to the contrary." [Footnote omitted.] 232 S.E.2d at 44.
As we have noted previously, our Legislature has expressly excepted the State and its political subdivisions from the provisions of Chapter 34-12, N.D.C.C., which authorize collective bargaining by employees in private industry. We take judicial notice of the fact that on numerous occasions our Legislature has refused to enact into law bills which were introduced to provide for collective bargaining by public employees.[1] We conclude, as did the Virginia Supreme Court in Commonwealth, supra, under similar circumstances, that the Legislature's repeated refusal to enact legislation authorizing collective bargaining by public employees indicates that it is not the Legislature's intent that public officials have an implied power to enter such agreements.
We hold that the State Highway Commissioner does not have an implied authority to enter exclusive collective bargaining agreements with employees of the State Highway Department or their selected representatives. We further hold that the exclusive collective bargaining agreement entered into between Commissioner Hjelle and the Union with a stated effective date of July 1, 1981, is void and of no effect.
The Union also asserts on appeal that the district court erred in granting a summary judgment of dismissal on their first four causes of action without permitting a trial on the merits. The purpose of a summary judgment, under Rule 56, N.D.R. Civ.P., is to allow for the prompt disposition of a controversy when there is no genuine issue of material fact and the party seeking the summary judgment is entitled to it as a matter of law. O'Connell v. Entertainment Enterprises, 317 N.W.2d 385 (N.D.1982). We conclude, as did the district court, that, as a matter of law, the Union is not entitled to relief on its first four causes of action.
We have determined that employees represented by the Union did not have a contractual right to a wage increase under the Union's agreement with the State Highway Department because that contract was void as an unauthorized collective bargaining agreement. Consequently, the Union's causes of action are based solely on an expectation of a wage increase for which the 1981 Legislative Assembly had appropriated sufficient funds.
We conclude that, under the circumstances of this case, employees represented by the Union did not have a right to or interest in the wage increase they now seek upon which to predicate a claim for relief. They had nothing more than a mere expectancy or anticipation of a future wage increase the denial of which falls far short of a necessary harm or injury upon which to base a claim for relief in the courts. See, Williams v. Board of Education of Plainfield, 176 N.J.Super. 154, 422 A.2d 461 (1980); Heyne v. Mabrey, 178 Ind.App. 610, *103 383 N.E.2d 464 (1978); Grant v. Nellius, 377 A.2d 354 (Del.1977).
In Heyne, supra, a class action was brought by nearly 5,000 state employees who alleged that their reclassification constituted a demotion because it in effect eliminated the possibility of them receiving further merit or step-pay increases within their particular job classifications. The Indiana Court of Appeals concluded that the employees' mere expectancy of pay increases fell short of constituting an injury upon which to base a legitimate claim:
"Plaintiffs have not been reduced in salary nor have their duties changed. Their only complaints relate to the change in job titles and the loss of possible merit or step increases in pay. Under these circumstances, it is difficult to discern any concrete injury sustained by class members....
"Nor can it be said that plaintiffs have `property rights' in the possibility of step increases in pay. As noted, supra, such a pay increase is dependent upon specific written recommendation and based upon acceptable standards of performance. Thus, the step increase is a mere expectancy which falls far short of a `legitimate claim of entitlement.' See Bishop v. Wood (1976) 426 U.S. 341, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684." 383 N.E.2d at 467.
Although the circumstances in this case differ from those in Heyne, supra, the cases are similar in the important respect that in both cases the employees involved do not have a vested right or interest in a future pay increase upon which to predicate a legitimate claim for relief in the courts.
Because employees represented by the Union have been found to not have had a contractual right to a wage increase on July 1, 1982, their claim to that increase rests solely upon the 1981 Legislative Assembly's appropriation of sufficient funds to provide state employees a maximum salary increase of eight percent (8%). This Court has defined the term "appropriation" as the setting apart of a definite sum of money for a specific purpose in such a way that public officials may use the amount appropriated, and no more than the amount appropriated for that purpose. Menz v. Coyle, 117 N.W.2d 290 (N.D.1962); Campbell v. Towner County, 71 N.D. 616, 3 N.W.2d 822 (1942). Based upon that definition, we conclude that the 1981 Legislative Assembly's appropriation of sufficient funds to allow state employees to receive an eight percent (8%) salary increase on July 1, 1982, did not constitute a mandate that state employees receive that or any salary increase nor did the act of appropriating the money vest in the state employees any legal interest or right in a salary increase upon which to predicate a cause of action on their failure to receive one.
Irrespective of the State Highway Commissioner's reasons for failing to provide his employees with an eight percent (8%) salary increase on July 1, 1982, and irrespective of whether or not actions, valid or otherwise, of the Governor or other state officials induced the Commissioner to act as he did, the Highway Department employees had no vested interest or right in a wage increase upon which they are entitled to seek relief in the courts from the Commissioner's decision.
We conclude that, as a matter of law, the Union is not entitled to the relief it seeks under its first four causes of action in this case. In accordance with this opinion, we hold that the district court did not err in dismissing the Union's first four causes of action, and we affirm the summary judgment of the district court.
VANDE WALLE, PAULSON and SAND, JJ., and ILVEDSON, Surrogate Judge, concur.
ILVEDSON, Surrogate Judge, sitting in place of PEDERSON, J., disqualified.
NOTES
[1] The following bills, introduced in the Legislature to authorize collective bargaining for public employees, were defeated: H.B. 1448, 48th Legis.Assembly, 1983; S.B. 2420, 47th Legis. Assembly, 1981; H.B. 1663, 46th Legis.Assembly, 1979; H.B. 1471, 45th Legis.Assembly, 1977.