**Muriel BROWN, Plaintiff and Appellant,**

v.

**NORTH DAKOTA STATE UNIVERSITY, a public corporation, Defendant and Appellee.**

**Civ. No. 10905.**

Supreme Court of North Dakota.

Aug. 15, 1985.

Chapman & Chapman, Bismarck, for plaintiff and appellant; argued by Daniel J. Chapman, Bismarck.

Richard B. Crockett, Sp. Asst. Atty. Gen., Fargo (argued), and Rick D. Johnson, Asst. Atty. Gen., State Bd. of Higher Educ., Bismarck, for defendant and appellee.

MESCHKE, Justice.

Muriel Brown appeals from a summary judgment of the District Court of Cass County dismissing her action against North Dakota State University (NDSU). We reverse, and remand for a trial on the merits.

Brown has been employed in a full-time teaching capacity at NDSU for ten years. During January 1984, Brown filed this declaratory judgment action alleging that NDSU, in refusing to grant tenure or consider Brown as a candidate for tenure, has violated regulations promulgated by the State Board of Higher Education (the Board).

Prior to the trial of this matter each party filed a motion for summary judgment. The trial court, granting NDSU's motion, entered a summary judgment dismissing Brown's action. On appeal Brown asserts that the trial court erred in granting a summary judgment of dismissal, and she requests this Court to reverse and remand for a trial or, in the alternative, for entry of judgment in Brown's favor.

A motion for summary judgment should only be granted if, upon taking a view of the evidence most favorable to the party against whom summary judgment is sought, it appears that there is no genuine issue as to any material fact and that the party seeking summary judgment is entitled to it as a matter of law. *Sagmiller v.*

*Carlsen,* 219 N.W.2d 885 (N.D.1974). The party moving for summary judgment has the burden of establishing that there is no genuine issue as to any material fact or as to any inferences reasonably deducible therefrom. *Farmers Elevator Company v. David,* 234 N.W.2d 26 (N.D.1975). The mere fact that both parties have moved for summary judgment does not establish that there are no genuine issues of fact to be determined. *Volk v. Auto-Dine Corporation,* 177 N.W.2d 525 (N.D.1970). We conclude that there are genuine issues of material fact in this case which render summary judgment inappropriate.:

Brown's employment with NDSU can be summarized as follows:

(1) For the 1974–1975 academic year, Brown was employed as an "Assistant Professor of English."

(2) For the 1975–1976 academic year, Brown was employed as an "Assistant Professor of English."

(3) For the 1976–1977 academic year, Brown was employed as an "Assistant Professor of English" designated in the letter offering the position as a "special appointment."

(4) For the academic year 1977–1978, Brown was employed as "Assistant Professor" designated as "special appointment."

(5) For the 1978–1979 academic year, Brown was employed as "Assistant Professor" without further designation on the appointment form.

(6) For the 1979–1980 academic year, Brown accepted an offer of a "full-time lectureship for one year only."

(7) For the 1980–1981 academic year, Brown accepted employment for a one-year appointment as a "lecturer."

(8) For the fall quarter of the 1981–1982 academic year, Brown received an offer of teaching assignments totalling 12 credit hours. She accepted and completed similar assignments for all quarters during the academic year.

(9) For the 1982–1983 academic year, Brown accepted an offer of teaching assignments for a "fall schedule as a lecturer," and she completed similar teaching assignments for all quarters of the academic year.

(10) For the academic year of 1983–1984, Brown was offered an appointment as "lecturer for the fall" and she completed similar appointments for all quarters of that academic year.

The parties agree that the Board regulations are part of the contractual relationship between NDSU and Brown.[1] The reg-

---

1. During November 1974, the State Board of Higher Education approved regulations regarding "Academic Freedom, Tenure, and Due Process," which provided in relevant part:

   "G. ACADEMIC FREEDOM, TENURE, AND DUE PROCESS
   State Board of Higher Education Regulations, approved November 1974.
   &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

   "A. GENERAL PROCEDURES
   *  *  *  *  *  *

   "5. a. Tenure for a faculty member is recognition of continuous appointment to the rank of instructor or higher at an institution, subject to the conditions defined in this policy.
   b. A full-time tenured appointment may be granted after four years of continuous full-time academic service to the institution (as defined by the institution), but in no event shall a faculty member be retained on a full-time probationary appointment longer than six years of continuous service. If tenure is

not to be granted and a sixth year contract is issued, it must be terminal.
   *  *  *  *  *  *

   "B. TERMS OF APPOINTMENT
   "1. With the exception of special appointments clearly specified by the institution to not involve tenure credit or status, such as those limited to a brief association with the institution and initial appointments funded by other than state-appropriated funds, all appointments to the rank of instructor or higher, hereafter referred to as faculty, shall be of two kinds: (a) probationary appointments, which are normally for one academic year, subject to renewal; or (b) appointments with tenure. In both cases contracts are normally issued for one academic year.
   *  *  *  *  *  *

   "C. NONRENEWAL OF APPOINTMENT OF PROBATIONARY FACULTY
   "1. In all cases, written notice that a probationary appointment is not to be renewed shall be given to the faculty member in ad-

ulations permit a grant of tenure "after four years of continuous full-time academic service to the institution (as defined by the institution). . . ." The regulations go on to state that a probationary faculty member who is not granted tenure status by the institution must be terminated at the end of the sixth year. Brown asserts that when NDSU continued to employ her beyond six years in a full-time teaching capacity it was incumbent upon NDSU to grant her tenure. NDSU asserts, to the contrary, that because Brown was given only special appointments and not probationary or tenure track positions with NDSU she was not entitled to consideration for tenure. NDSU also asserts that Brown's employment as a "lecturer," com-

mencing with the 1979–1980 academic year, does not constitute employment upon the faculty staff for which the tenure regulations apply.

█ The determination of whether or not a contract is ambiguous is a question of law for the court to decide. *Schulz v. Hauck*, 312 N.W.2d 360 (N.D.1981). Upon reviewing the contract letters and the regulations relevant to this litigation, we conclude that they are ambiguous and that the ambiguities cannot be resolved from the written documents themselves without reference to extrinsic evidence of intent. Thus, resolution of the ambiguities requires factual determinations for which summary judgment is inappropriate. See

vance of the expiration of his or her appointment, as follows:

\* \* \* \* \* \*

"c. At least twelve months before the expiration of an appointment after two or more academic years of service at the institution.

\* \* \* \* \* \*

"G. ADMINISTRATIVE ACTIONS OTHER THAN DISMISSAL

\* \* \* \* \* \*

"2. No faculty member shall be subjected to demotion in status or reduction in salary without reasonable and just cause, which shall be stated in writing if the faculty member so requests."

During March 1983, the State Board of Higher Education revised the regulations. As revised, the regulations provide in relevant part:

"G. ACADEMIC FREEDOM, TENURE, AND DUE PROCESS

State Board of Higher Education Regulations, approved March 1983.

\* \* \* \* \* \*

"B. *Academic Staff Appointments*

"1. The following academic staff appointments are appointments to the faculty of an institution; they shall be at the rank of instructor, assistant professor, associate professor, and professor and shall be probationary, tenured or special.

"a. Probationary Appointments are renewable annually and yield credit toward tenure. Initial probationary appointment must be entirely supported by state appropriated funds. No person may spend more than six years of academic service on probationary appointment at an institution.

\* \* \* \* \* \*

"c. Special Appointments of academic staff do not involve either tenure credit or status. Examples are:

"(i) Courtesy adjunct appointments awarded in accordance with Board policy to professional people in the community who contribute to the academic or research program of the institution;

"(ii) Visiting appointments for people holding academic rank at another institution of higher education;

"(iii) Appointments of retired faculty members on special conditions;

"(iv) Initial appointments supported wholly or partially by other than state appropriated funds;

"(v) Appointments clearly limited to a brief association with the institution, as defined by the institution; but not to exceed the maximum probationary period; and

"(vi) Terminal appointments given with notice of nonrenewal to faculty members who were previously on probationary appointment. A terminal appointment with notice of nonrenewal must be given to a faculty member no later than the end of the sixth year of probationary appointment if the decision is made to deny tenure.

"(vii) Faculty employed in the Minot State College Laboratory School.

"2. The following academic staff appointments shall be made without faculty rank or status:

"a. Lectureship appointments, which shall be for performance of specifically assigned academic duties only, without general faculty responsibilities. These appointments should ordinarily be either part-time or temporary; and

"b. Graduate teaching assistant appointments."

*Keller v. Hummel,* 334 N.W.2d 200 (N.D. 1983).

Among others, the following material factual issues remain unresolved in this case: (1) the exact nature of Brown's duties and responsibilities during her ten years of employment with NDSU; (2) whether Brown's duties and responsibilities changed as her title descriptions changed from Assistant Professor of English, to Assistant Professor with a special appointment designation, to lecturer; (3) whether Brown's position, during any or all of her ten years of employment with NDSU, could properly be designated as a "special appointment" as contemplated by the Board regulations; (4) whether the intent of the Board regulations was to allow a university to employ a person in a full-time teaching capacity for more than six years without according tenure status to that person; and, possibly, (5) whether the Board's revised regulations contemplate that a university could offer lectureship appointments other than on a part-time or temporary basis.

Although the trial court entered a summary judgment dismissing Brown's action, it is apparent from the judge's memorandum opinion that he also recognized the existence of relevant factual issues which have been raised by Brown's action. The trial court made numerous "findings" in its memorandum opinion which we conclude were inconsistent with and inappropriate to granting a summary judgment of dismissal:

> "[E]ven if the term 'brief association' as used in the regulations is considered to be ambiguous, reference to the underlying facts or circumstances of the parties' contractual situation make it very clear that year-to-year non-tenure track appointments were the most that could have been contemplated by the parties with regard to the Plaintiff's employment. Further, when this Court is called upon to interpret a written contract, when the meaning of the contract or a term is in doubt, and in dispute, the Court, in order to determine meaning, will consider all the facts and circumstances leading up to and attending the contract's execution. The Court also considers the relationship of the parties, the nature and situation of the subject matter, and the apparent purpose for making the contract. . . . It is clear that there exists under the facts and circumstances of this case a 'plausible reason' for the University's actions. . . .

> "[T]he term 'brief associations' in the regulations is understood to include Plaintiff's year-to-year contracts which were obviously given due to then existing economic exigencies as well as expected future economic exigencies. . . .

> " . . . The Court has considered the demeanor and credibility of all witnesses who appeared before it. . . .

When the trial court deems it necessary to make inferences from surrounding circumstances, resolve ambiguities in a written contract, and to make findings of fact, the entry of a summary judgment is generally inappropriate. See *Albers v. NoDak Racing Club, Inc.,* 256 N.W.2d 355 (N.D.1977). The lengthy discussion of factual matters and accompanying fact determinations by the trial court in its memorandum opinion in this case demonstrates that genuine issues of material fact exist. Summary judgment of dismissal is, therefore, inappropriate.

For the reasons stated in this opinion, the summary judgment is reversed and the case is remanded for a trial on the merits. Because the trial judge summarily determined some of the factual issues, on remand we direct the presiding judge of the East Central Judicial District to reassign the case to another judge within the district.

ERICKSTAD, C.J., and LEVINE, VANDE WALLE and GIERKE, JJ., concur.