**RED RIVER HUMAN SERVICES FOUN-DATION, a nonprofit organization, Plaintiff and Appellant,**

v.

**The STATE OF NORTH DAKOTA, DE-PARTMENT OF HUMAN SERVIC-ES, Defendant and Appellee.**

Civ. No. 910031.

Supreme Court of North Dakota.

Nov. 12, 1991.

Serkland, Lundberg, Erickson, Marcil & McLean, Ltd., Fargo, for plaintiff and appellant; argued by Brad A. Sinclair. Appearance by Armond G. Erickson.

Sidney J. Hertz Fiergola (argued), Asst. Atty. Gen., Atty. General's Office, Bismarck, for defendant and appellee.

LEVINE, Justice.

Red River Human Services Foundation (Red River) appeals from a district court summary judgment dismissing its action against the State of North Dakota, Department of Human Services (DHS), for rent of $299,990.16 and from an order denying its motion for reconsideration and vacation of the judgment. We affirm.

In 1982, DHS leased office space from Red River for use as a regional human service center. The term of the lease was

thirty years,[1] with lease years to run from July 1 of each year through June 30 of the following year. One clause provided in part:

"It is specifically provided, however, that North Dakota will only be obligated to pay rent as provided for herein on the condition that the North Dakota Legislature in either regular or special session appropriates sufficient funds for the purpose of paying rent at human service facilities within North Dakota. In the event that insufficient funds are provided by Legislative Appropriation for rent of human service facilities, this Lease may be cancelled by North Dakota to be effective as of the end of a given biennium upon 90 days prior written notice to Landlord."

On April 1, 1987, DHS notified Red River that it was cancelling the lease at the end of June 30, 1987. The notice accompanied a letter stating in part:

"The North Dakota Legislature is now in session.... The House of Representatives and the Senate have each approved a bill containing appropriations for the purpose of paying rent at human service facilities within North Dakota. The amounts described in that bill ... provide insufficient funds for the rent of human service facilities. Accordingly, I have been authorized to deliver to you the attached notice of cancellation of lease."

In its DHS appropriation for the 1987–1989 biennium, the Legislature specifically recognized that it was appropriating insufficient funds for rent of human service facilities:

"SECTION 8. LEGISLATIVE INTENT—HUMAN SERVICE CENTER OPERATING EXPENSES. The legislative assembly recognizes that funds appropriated in subdivision 1 of section 1 of this Act for defraying operating expenses in human service centers during the biennium beginning July 1, 1987, and ending June 30, 1989, are insufficient to fulfill otherwise ongoing obligations, including certain lease commitments, that are conditioned upon legislative appropriations. It is the intent of the legislative assembly that the department of human services take such actions as may be necessary to curtail or modify otherwise ongoing obligations so as to operate within the appropriations contained in subdivision 1 of section 1 of this Act for purposes of defraying human service center operating expenses."

S.L.1987, Ch. 51, § 8.

Red River and DHS thereafter negotiated about continued occupancy of the premises. They ultimately executed "A LIMITED TEMPORARY AMENDMENT" of the lease and a "MEMORANDUM OF UNDERSTANDING." The limited temporary amendment provided in part:

"(1) This Amendment is intended and limited to altering the amount of rent due and to be due by Tenant to Landlord for the specific period commencing on July 1, 1987, and concluding on June 30, 1989, only, and to negating liability for any other rental sum during that period....

"(2) For the period set out above, the paragraph entitled 'Base Rent' shall be amended by striking the numerals '9.47' and inserting the numerals '5.89' in lieu thereof.

\*    \*    \*    \*    \*    \*

"(6) It is the specific intention of the parties hereto that the Landlord reserves and preserves unto itself the right to challenge in a court of law the State of North Dakota's effort to cancel the April, 1982, lease because of an alleged insufficient legislative appropriation for rent purposes, should such an attempt at cancellation occur in the future or should the terms of the Memorandum of Understanding between the parties of even date be breached.

"The execution of this Amendment by the parties is not deemed to be a waiver of any legal right or remedy possessed by either of them.

\*    \*    \*    \*    \*    \*

---

1. The parties have not raised, and we do not consider, any issue about the authority of an administrative agency to contract beyond the two years of a legislative biennium.

"(8) The Tenant agrees by this amendment that ... the lease ... is in effect; and specifically agrees that the cancellation of said lease ... is hereby voided."

The memorandum of understanding provided in part:

"RED RIVER HUMAN SERVICES FOUNDATION and the DEPARTMENT OF HUMAN SERVICES hereby enter into this Memorandum of Understanding for the express purpose of setting forth an agreement that is *not* to be interpreted as either interfering with, amending, altering, or changing the specific terms and conditions of that certain real estate lease entered into in April, 1982, to be effective commencing on July 1, 1982, and all of its exhibits and amendments which have heretofore and separately been entered into between the parties.

\* \* \* \* \* \*

"... should the State of North Dakota Department of Human Services be in possession of the leased premises owned by Red River Human Services Foundation located at 15 Broadway, Fargo, North Dakota, on February 2, 1988, the Department of Human Services, agrees to carry out and continually support the following special provisions:

"(A) Provide in the 1989–91 Department of Human Services budget a sufficient *additional* sum of money, determined to be in an amount of no less than $299,990.16, to cover the allocated costs incurred by the Red River Human Services Foundation in excess of the rental paid pursuant to the lease amendment effective during the period July 1, 1987 through June 30, 1989, for the leased facility.... In addition, the Department of Human Services and Red River Human Services Foundation hereby agree to jointly support the appropriation as referred to herein at each and every step within both the executive budgeting process and the legislative process which is to be undertaken prior to and during the 1989 legislative session."

When DHS did not pay the additional $299,990.16, which was demanded on October 19, 1989, Red River brought this suit to recover that sum. Both parties moved for summary judgment. A judgment of dismissal was entered and Red River appealed.

The dispositive issues in this appeal are (1) the meaning of the parties' lease, the limited temporary amendment of the lease, and the memorandum of understanding, and (2) whether or not there was an appropriation authorizing DHS to pay Red River the $299,990.16 it claimed to be due.

■ Construction of a written contract to determine its legal effect is a question of law. *Hoge v. Burleigh County Water Mgt. Dist.*, 311 N.W.2d 23 (N.D.1981). The intention of the parties is to be ascertained from the writing alone, if possible. Section 9–07–04, N.D.C.C.; *Hoge, supra.* "When two instruments have been executed at the same time, by the same parties, in the course of the same transaction, and covering the same subject matter, they must be read and construed together." *Jorgensen v. Crow*, 466 N.W.2d 120, 123 (N.D.1991). A court may look to parol evidence if a contract is ambiguous or does not reflect the parties' intent because of fraud, mistake, or accident. *Id.* "[W]e must be guided first by the language of the contract itself, and where the contract is clear and unambiguous there is no reason to go further." *Hoge, supra*, 311 N.W.2d at 27. As we read them, the lease, the limited temporary amendment, and the memorandum of understanding, while not models of precision, are clear and unambiguous.

■ The escape clause in the lease authorizes DHS to cancel the lease if "insufficient funds are provided by Legislative Appropriation for rent of human service facilities." The 1987 Legislature appropriated insufficient funds for rent of human service facilities in the 1987–1989 biennium. In the appropriation bill enacted, the Legislature recognized this and expressly directed DHS to "take such actions as may be necessary to curtail or modify otherwise ongoing obligations so as to operate within the appropriations." S.L.1987, Ch. 51, § 8.

Thus, DHS was authorized to cancel the lease as it did.

After DHS canceled the lease, the parties negotiated about continued occupancy and executed a limited temporary amendment and a memorandum of understanding, pursuant to which Red River and DHS temporarily altered the rent due Red River from DHS for the period of July 1, 1987, through June 30, 1989, and negated liability for any other rental sum for that period. Red River reduced the base rent for that period from $9.47 per square foot to $5.89 per square foot. In exchange for Red River's temporary reduction of the rent due for July 1, 1987, through June 30, 1989, DHS voided its cancellation of the lease and agreed to seek an appropriation for the 1989–1991 biennium from the Legislature for an additional $299,990.16 to cover the allocated costs incurred by Red River in excess of the reduced rent paid pursuant to the limited temporary amendment.

DHS agreed to seek an appropriation of an additional $299,990.16, but did not guarantee that its efforts would be successful. DHS included in its proposed budget for the 1989–1991 biennium a request for the additional $299,990.16. The requested appropriation was deleted by the Executive Budget Office prior to submission of the Governor's budget proposal to the 1989 Legislature. DHS sought restoration of the deleted request in the Senate and the House of Representatives. Although the 1989 Legislature failed to appropriate the additional $299,990.16, DHS fulfilled its responsibilities under the agreements executed by it and Red River.

Relying on *First Trust Co., Inc. v. State*, 449 N.W.2d 491 (Minn.App.1989), Red River argues that "unless [DHS's] appropriation contains *non-appropriation language*, [DHS] cannot escape its rental obligation." Red River also contends that DHS "failed to demonstrate that as a matter of law, no appropriation was made to pay its obligation outstanding to Red River." We disagree with both arguments.

In *First Trust Co., Inc. v. State, supra*, the Minnesota Court of Appeals held that, absent express nonappropriation language, funds appropriated by the legislature for noninstructional college expenditures could be used to satisfy the state's minimum monthly payment obligation under an energy services agreement, the continuation of which had been made contingent upon continued legislative appropriation of funds. We decline to follow that decision, which is distinguishable because of the statutes involved, and is contrary to our decisions in which we have consistently held that an appropriation is the setting apart of a definite sum of money for a specific purpose in such a way that public officials are authorized to spend that sum, and no more, for the specified purpose. *See, e.g., American Fed. of State, County, & Mun. Employees, Council No. 95 v. Olson*, 338 N.W.2d 97 (N.D.1983); *Sunbehm Gas, Inc. v. Conrad*, 310 N.W.2d 766 (N.D.1981); *City of Fargo, Cass County v. State*, 260 N.W.2d 333 (N.D.1977); *Menz v. Coyle*, 117 N.W.2d 290 (N.D.1962); *Campbell v. Towner County*, 71 N.D. 616, 3 N.W.2d 822 (1941); *State v. Holmes*, 19 N.D. 286, 123 N.W. 884 (1909). We note that this court's appropriation decisions are in accord with a recent California decision, *Knight v. Board of Admin.*, 223 Cal.App.3d 527, 273 Cal.Rptr. 120 (1990). We conclude that DHS's appropriation need not contain non-appropriation language in order to defeat Red River's claim.

DHS specifically agreed to seek an appropriation of an additional $299,990.16. It did so in its proposed budget. The request was deleted by the Executive Budget Office. DHS specifically sought legislative restoration of the request. The Legislature did not include the additional $299,-990.16 in the appropriation for DHS for the 1989–1991 biennium. DHS's request was specifically rejected. That history clearly manifests a legislative intention not to fund the request for an additional $299,990.16. We conclude that there was no appropria-

tion for the $299,990.16 Red River now seeks to recover in this action.

For the foregoing reasons, we conclude that the district court properly granted summary judgment dismissing Red River's action.

■ Red River also contends that the summary judgment should be reversed because the district court failed to make findings of fact. We disagree. This court has said that findings of fact are inappropriate in granting summary judgment. *Albers v. NoDak Racing Club, Inc.*, 256 N.W.2d 355, 359 (N.D.1977) ("If the court deemed it necessary to make findings of fact as distinguished from a mere recital of facts, then the issuance of a summary judgment by the trial court was improper."). *See also, Brown v. North Dakota State University*, 372 N.W.2d 879, 883 (N.D.1985) ("When the trial court deems it necessary to make inferences from surrounding circumstances, resolve ambiguities in a written contract, and to make findings of fact, the entry of a summary judgment is generally inappropriate."). While a brief explanation of the basis for a summary judgment is desirable and helpful for appellate review, we adhere to the view expressed in *Albers* and *Brown* and decline to require findings of fact in ruling on motions for summary judgment.

■ Red River contends that the district court erred in denying its motion under Rule 60(b), N.D.R.Civ.P., for reconsideration and vacation of the judgment. The issue on appeal from the order denying Red River's Rule 60(b) motion is whether or not the trial court abused its discretion. *See Production Credit Ass'n v. Dobrovolny*, 415 N.W.2d 489 (N.D.1987). We have already determined that the district court properly granted summary judgment dismissing Red River's claim and we are not persuaded that the district court abused its discretion in denying Red River's Rule 60(b) motion to vacate the judgment.

We need not consider other issues raised because their resolution is not necessary to the determination of this case. *Hospital Services, Inc. v. Brooks*, 229 N.W.2d 69 (N.D.1975).

Affirmed.

ERICKSTAD, C.J., and GIERKE and MESCHKE, JJ., concur.

VANDE WALLE, Justice, concurring specially.

I concur in the result reached in the opinion written for the Court by Justice Levine and most of the rationale therein. I write specially to note that I do not believe the Department of Human Services can obligate the State to a lease in excess of the period of time for which its appropriation is made, *i.e.*, the biennium, without specific legislative authority to do so. 72 Am.Jur.2d *States* § 73; 81a C.J.S. *States* § 156. No such authority has been called to our attention. It may be that leases for a period of time, without specific authority, in excess of the biennium are enforceable insofar as they are contingent upon future legislative appropriations, but it would be perverse to impose a "nonappropriation" theory in aid of a lease that is so structured. If the Department had authority to obligate the State to a lease which extended beyond the biennium, a "nonappropriation" theory would not be illogical because we might assume the Legislature intended to honor the obligations it had authorized except where it specifically indicated a contrary result. *See City of Fargo, Cass County v. State*, 260 N.W.2d 333 (N.D.1977) [specific language in appropriation bill prohibited using plant improvement funds to pay special assessments]; 72 Am.Jur.2d *States* § 73.