In the Matter of the Petition for Supervision of the DIOCESE OF BISMARCK TRUST, Created by the Last Will and Testament of T. Clem Casey, by Myron H. Atkinson, Jr., and First Trust Company of North Dakota, N.A., Co–Trustees.

Myron H. ATKINSON, Jr., and First Trust Company of North Dakota, N.A., Co–Trustees, Appellants,

v.

DIOCESE OF BISMARCK, Appellee.

Civ. No. 920301.

Supreme Court of North Dakota.

May 17, 1993.

Kermit E. Bye of Vogel, Brantner, Kelly, Knutson, Weir & Bye, Fargo, for appellants.

Albert A. Wolf of Wheeler Wolf, Bismarck, for appellee.

SANDSTROM, Acting Chief Justice.

Myron H. Atkinson, Jr., and First Trust Company of North Dakota, as co-trustees of the Diocese of Bismarck Trust, appeal from an order granting attorney's fees to the Diocese of Bismarck. We reverse.

In 1969, T. Clem Casey executed his Last Will and Testament. Article VI of the Last Will and Testament created the Diocese of Bismarck Trust.[1] Casey died in 1970. Under the terms of the will, Myron Atkinson and First Trust Company of North Dakota were appointed co-trustees of the Diocese of Bismarck Trust and directed to pay the governing board of the Diocese of Bismarck the net income of the trust for 20 years. The trust stated that the Diocese could use the income for capital improvements of parochial schools in Bismarck, or, if no parochial schools exist, for capital improvements in Bismarck connected with the activities of the Diocese. At the end of 20 years, the governing board of the Diocese of Bismarck could request all or any part of the principal and unpaid income to use for the same purposes.

In 1990, a dispute arose between the co-trustees and the Diocese regarding the interpretation of the term "capital improvement" and the status of the trust after expiration of the 20–year payment period. As a result, the co-trustees petitioned the district court for construction of the trust. The Diocese of Bismarck and the co-trustees settled the dispute in October 1991, and entered into a stipulation and settlement agreement. Section 9 of that agreement provides, in part:

"Each of the parties do for themselves and for the predecessors and successors, principals, employees, attorneys, and agents, as well as their respective assigns, agents, representatives, heirs, and

1. Article VI, subsection (1) and (2) of T. Clem Casey's Last Will and Testament state:

"(1) My Trustees shall pay to the governing board of the DIOCESE OF BISMARCK, a corporation of Bismarck, North Dakota, the entire net income from the "Diocese of Bismarck Trust" in annual or other convenient installments, such income to be used for capital improvements of the parochial school facilities in the City of Bismarck, North Dakota. In the event there shall be no operating parochial school facilities in the City of Bismarck, North Dakota such income shall be used for capital improvements within the City of Bismarck, North Dakota, to be used in connection with activities of the Diocese of Bismarck as shall be determined by its governing board.

"(2) The "Diocese of Bismarck Trust" shall continue for a term of twenty (20) years, commencing with the date of my death. At any time after the expiration of twenty (20) years the governing board of the DIOCESE OF BISMARCK, a corporation, may request all or any portion of the principal and undistributed income of the trust as they deem necessary to be used for capital improvements of the parochial school facilities in the City of Bismarck, North Dakota. In the event there shall be no operating parochial school facilities in the City of Bismarck, North Dakota, such undistributed income and principal shall be used at such times as requested by such governing board, such use to be for capital improvements within the City of Bismarck, North Dakota, in connection with activities of the Diocese of Bismarck as determined by its governing board."

personal representatives (hereinafter collectively referred to as the "Releasors"), remise, release, and forever discharge each of the parties from the other, and one from another, including but not limited to each of them, in both their official and individual capacities, of and from any and all actions, causes of action, appeals, liabilities, suits, debts, sums of money, accounts, bonds, bills, covenants, contracts, controversies, agreements, promises, damages, judgments, claims and demands whatsoever, state or federal, in law or in equity, whether known or unknown, which the Releasors, any or all of them, may now have or hereafter have or claim to have against the Releasees, any or all of them, for, upon, or by reason of any matter, event, cause or thing which relate in any way to or exist by reason of:

.    .    .    .    .

"(b) The parties' incurring of attorneys' fees, costs or expenses in connection with the action."

The district court approved the agreement in November, 1991. The trust was subsequently placed under the district court's supervision in accordance with the settlement agreement.

In July, 1992, the Diocese of Bismarck moved for attorney's fees and costs incurred "in connection with the petition for construction of trust instruments and the discovery and other proceedings relating thereto." The co-trustees opposed the motion, arguing that (1) the settlement agreement clearly barred the claim, and (2) there was no statutory basis upon which attorney's fees could be awarded. The Diocese of Bismarck argued that the release contained in the settlement agreement applied to the co-trustees, not to the trust. The Diocese also argued that the actions it took in response to the petition for construction benefited the trust; therefore, the Diocese was entitled to have its attorney's fees and costs paid by the trust.

The district court granted the motion and ordered that $22,250.79 in attorney's fees and costs be paid to the Diocese of Bismarck from the Diocese of Bismarck Trust.

In doing so, the district court found that "those fees and the costs and efforts expended by [the attorney for the Diocese] were necessary and an inherent part of this lawsuit. And irrespective of the stipulation in paragraph 9, the Court is going to grant [the] motion for attorney's fees and costs and order that they be paid from the trust."

The co-trustees appeal. They argue that the district court erred in ordering the trust to pay the Diocese of Bismarck's attorney's fees and costs. They claim that (1) the settlement agreement clearly bars the claim, and (2) there is no statutory basis to award the Diocese of Bismarck attorney's fees and costs. The Diocese contends that the release in the settlement agreement applies to the co-trustees and not the trust. The co-trustees contend the release was meant to include the trust. The Diocese also argues that when a trust beneficiary takes action that benefits the trust, the beneficiary may recover attorney's fees and costs from the trust. The co-trustees dispute both the principle and that the actions benefited the trust.

■ "Construction of a written contract to determine its legal effect is a question of law." *Red River Human Services Found. v. DHS*, 477 N.W.2d 225, 227 (N.D.1991). "The intention of the parties is to be ascertained from the writing alone, if possible." *Id.* N.D.C.C. § 9–07–04. "In interpreting a contract we look first to its language and, if the intent is apparent from its face, there is no room for construction." *Stuhlmiller v. Nodak Mut. Ins. Co.*, 475 N.W.2d 136, 138 (N.D.1991). A court may examine parol evidence of intent when a written contract is ambiguous, or when it does not reflect the parties' intent because of fraud, mistake, or accident. *Jorgensen v. Crow*, 466 N.W.2d 120, 123 (N.D.1991); N.D.C.C. § 9–07–05.

■ The language of the settlement agreement is clear. The stipulation was to resolve all controversies involving the parties. Each of the parties agrees to release the other and the other's principal from claims for "attorneys' fees, costs or expenses in connection with the action." The Diocese of Bismarck Trust is the co-trust-

ee's principal.[2] The release covers expenses incurred in the petition for construction of the trust. Accordingly, the Diocese of Bismarck's claim for attorney's fees is barred by the settlement agreement. Since the language is clear and unambiguous, we need not refer to the extrinsic evidence offered by the Diocese. The order granting the Diocese of Bismarck's attorney's fees and costs is reversed.

MESCHKE and NEUMANN, JJ., and JAMES A. WRIGHT and GARY A. HOLUM, District Judges, concur.

JAMES A. WRIGHT and GARY A. HOLUM, District Judges, sitting in place of VANDE WALLE, C.J., and LEVINE, J., disqualified.

2. Generally, an agent-principal relationship does not exist between a trustee and a trust. *See* Restatement (Second) of Trusts § 8 (1957). However, we follow N.D.C.C. § 59–02–10, which states:

"*Authority of trustee.* A trustee is a general agent for the trust property. His authority is such as is conferred upon him by the declaration of trust, by this title, and by title 30.1. His acts, within the scope of his authority, bind the trust property to the same extent as the acts of a general agent bind his principal."

We give effect to the language regarding the release of the parties and their principals, if possible. N.D.C.C. § 9–07–06. This language would be meaningless if "principal" did not refer to the trust.